U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 05-10053

ORDER

The relief set forth on the following pages, for a total of 16 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**07/08/2008**



_____
US Bankruptcy Court Judge
District of South Carolina

Entered: 07/09/2008

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 05-10053-HB |
| | Chapter 13 |
| Daniel Maurice Fowler and Marsha Dean W. Fowler, | **ORDER** |
| Debtors. | |

This matter came before the court for hearing on the Chapter 13 trustee's Objection to Fees Requested by the attorney for Debtors, John R. Cantrell, Jr.

## FINDINGS OF FACT

1.  The Debtors filed this Chapter 13 case on September 5, 2005.[1]

2.  Cantrell filed with the petition a Disclosure of Compensation of Attorney for Debtor pursuant to Fed. R. Bankr. P. 2016(b) indicating that he had charged and received the sum of $2000 for legal services in this case, with no balance due. His Rule 2016(b) Disclosure stated, "Extra charges governed by standard Chapter 13 retainer agreement."

3.  The plan was confirmed on November 21, 2005. The case docket indicates little activity from that time until March 3, 2008. On that date First Federal Savings & Loan Association of Charleston filed a Motion for Relief from Stay, claiming that it was entitled to relief as a result of the Debtors' failure to make regularly scheduled payments. The motion stated that the creditor incurred fees and costs in connection with the default and filing of the motion in the amount of $675.

---

[1] This case was filed prior to any amendments in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and prior to the application of this court's Operating Order 07-12, which establishes the current procedure for approval of compensation for Chapter 13 debtors' attorneys in this district.

    4.     Creditor included one of the Debtors' Social Security numbers within the Motion for Relief from Stay and filed it on the CM/ECF docket.

    5.     On March 13, 2008, Cantrell, on behalf of the Debtors, filed a rather detailed Objection to First Federal's Motion for Relief from Automatic Stay, which included numerous procedural and substantive defenses with citations to statutory and case law. Included therein was an objection to creditor's attorney fees and Debtors' denial that they were in default at any time. Debtors asked the court to deny the motion in its entirety and award sanctions for an improper motion, requesting actual damages including attorney fees, costs, emotional distress and punitive damages.

    6.     On March 15, 2008, Debtors also filed Adversary Proceeding No. 08-80037 naming First Federal as the defendant. The complaint requested injunctive relief, a finding of contempt of court, actual, punitive and compensatory damages and sanctions for creditor's violation of the E-Government Act of 2002, 44 U.S.C. § 3500, et seq., applicable rules and other law. That matter is pending.

    7.     On March 15, 2008, Debtors also filed a Motion to Disable Public Access to Filed Documents, asking that the court redact the portion of the document filed by First Federal containing the Social Security number. On March 17, 2008, this motion was granted *ex parte* and the information was removed from the public record.

    8.     On March 27, 2008, Debtors' attorney filed an Amended Rule 2016(b) Disclosure of Compensation indicating the following charges:

```
Attorney Fee Breakdown:
$2,000.00   Base Fee for Filing Case
$275.00     Motion to Disable Public Access 3-13-08
$975.00     Defense of 1st Federal MFRS through 3-27-08
```

Counsel also filed a corresponding Proof of Claim form which included the total amount and nature of the claim, but gave no other detail.

9. On March 28, 2008, Debtors' attorney filed a Motion for Sanctions against First Federal, asking for reimbursement from that creditor of the $275 charge for the Motion to Disable.

10. On March 28, 2008, Debtors' attorney also filed a Third Disclosure of Compensation as follows:

```
Attorney Fee Breakdown:
$2,000.00  Base Fee for Filing Case
$275.00    Motion to Disable Public Access 3-13-08
$975.00    Defense of 1st Federal MFRS through 3-27-08
$200.00    Motion for Sanctions against First Federal 3-28-08
$50.00     Amend 2016(b) statement 3-28-08
$50.00     Amend POC atty fees 3-28-08
```

Counsel also filed a corresponding Proof of Claim form which included the total amount and nature of the claim, but gave no other detail.

11. On March 29, 2008, Debtors' attorney filed a Motion to Shorten Notice Time regarding discovery requests directed to First Federal. The discovery requests included inquiries related to the defense of the Motion for Relief from Stay scheduled for hearing on April 10.

12. On April 1, 2008, without a hearing the Court issued an order deeming the April 10, 2008 hearing on First Federal's Motion for Relief from Stay a preliminary hearing as a result of the need for discovery.

13. On April 3, 2008, the Court scheduled the hearing on the Motion for Sanctions for May 8, 2008.

14. First Federal responded to the Motion for Sanctions, and on April 7 the parties filed a proposed Settlement Order settling the matters other than the adversary.

3

That order includes the following:

> This matter comes before the court pursuant to the motion of First Federal Savings & Loan of Charleston (hereinafter "Movant") which seeks relief from the automatic stay in this case. The Trustee did not file an Objection to the Motion. The parties have reached an agreement as to the Motion as set forth herein.
>
> 1. Debtors will bring the account current by April 18, 2008.
>
> 2. Movant will pay $275.00 to the Chapter 13 Trustee to reimburse for the cost of the Motion to Disable Public Access.
>
> 3. Debtors will withdraw their Motion for Sanctions and their Request for Production and Accounting.
>
> 4. Parties shall each be responsible for their own legal fees and costs, except as indicated herein. Movant shall not charge debtors account for any legal fees or costs incurred as a result of any default prior to the date of this settlement order and this provision regarding prior defaults shall survive discharge or dismissal of this case. Nothing in this paragraph shall restrict Movant's rights to seek legal fees and/or costs against debtors for any default that occurs after the date of this settlement order.

15.  As a result of the settlement, the Motion for Sanctions was withdrawn and the stay hearing cancelled.

16.  On April 15, 2008, the Chapter 13 trustee filed an Objection to the Rule 2016(b) Disclosure of Compensation, and the Court scheduled a hearing on the trustee's objection for May 8, 2008.

17.  On May 7, 2008, Debtors' attorney filed another Amended Rule 2016(b) Disclosure of Compensation as follows:

```
Attorney Fee Breakdown:
$2,000.00  Base Fee for Filing Case
$275.00    Motion to Disable Public Access 3-13-08
$325.00    Motion for Sanctions against First Federal through 4-9-08
$100.00    Amend 2016(b) statement & POC atty fees 3-27-08
$50.00     Amend 2016(b) statement & POC atty fees 3-28-08
$250.00    Request for production and motion to shorten notice
$1,625.00  Defense of 1st Federal MFRS as of 4-9-08
$100.00    Compute time and Amend 2016(b) and POC atty fees 5-7-08
```

Counsel also filed a corresponding Proof of Claim form which included the total amount and nature of the claim, but gave no other detail.

4

18. At the hearing on May 8, the trustee stated that he did not object to the Court's consideration of the additional compensation request filed the day before, but renewed his objection as to the amount previously claimed and asked that the Court inquire into the additional charges as well.

19. At the May 8 hearing, Debtors' attorney presented the following time summary to the Court in support of his May 7 and prior fee requests:

| Date | Time | Action taken |
|---|---|---|
| 3-3-08 | .3 | Received and review MFRS, pull file and review listing for First Federal, carefully examine Certification of Facts form for compliance with local rules |
| | .1 | Email to client re: MFRS allegations for confirmation |
| 3-13-08 | 2.6 | Prepare objection to MFRS, compare MFRS Certification of Facts form to current website version to ensure accuracy of form |
| | .5 | Proofread objection to MFRS, locate tax value from Horry County and update my Certification of Facts |
| | .1 | File objection to MFRS |
| | .1 | Serve objection on creditor by mail and client by email (reduced from .2 hours by discretion) |
| 3-15-08 | .6 | Prepare ex parte motion and order to disable public access |
| | .1 | Prepare Certificate of Service (COS) on creditor and counsel |
| | .2 | File ex parte motion, order and COS |
| | .2 | Serve motion and order on creditor and counsel |
| 3-27-08 | .2 | Prepare amended 2016(b) and amended Proof of Claim (POC) for attorney fees |
| | .2 | File amended 2016(b) and POC for attorney fees |
| 3-28-08 | .6 | Prepare motion for sanctions to reimburse estate and proposed order |
| | .1 | File motion for sanctions, proofread and make corrections |
| | .1 | Prepare and file COS of motion for sanctions |
| | N/C | (.1 hr.) Serve motion for sanctions on creditor and counsel (N/C means no charge by discretion) |
| | .2 | Prepare and file amended 2016(b) and amended POC for attorney fees |
| 3-29-08 | .2 | Prepare request for production and accounting |
| | .1 | File request for production and accounting |
| | .3 | Prepare ex parte motion to shorten time to respond and proposed order |
| | .1 | File motion and proposed order to shorten time to respond |
| | .1 | Prepare COS of request for production, motion, and order |
| | .1 | File COS above |
| | N/C | (.1 hr) Serve all above except COS on opposing counsel |
| 4-1-08 | .4 | Email to trustee responding to request for attorney fee breakdown |
| | N/C | (.2 hr) Complete and send email after doing time computations for email |
| 4-2-08 | .1 | Phone Call (PC) to trustee re: MFRS, left message since trustee out of office |

5

| Date | Hours | Description |
|---|---|---|
| 4-2-08 | N/C | (.1 hr) PC to Kristen Voyer re: fax, left message |
| 4-3-08 | N/C | (.1 hr) PC to Ron Jones, left message |
|  | 1.4 | PC from Ron Jones re: MFRS and various motions and settlement possibilities |
| 4-4-08 | .2 | Prepare and fax letter to Kristen Voyer re: proposed settlement offer |
| 4-7-08 | .5 | Prepare and fax letter to Clawson and Staubes in response to fax received today re: MFRS preliminary hearing |
| 4-8-08 | N/C | (unknown duration) Email to opposing counsel re: change to settlement order |
|  | .1 | Review First Federal response to sanctions motion |
|  | N/C | (.1 hr) PC to Glenda Parker (First Fed paralegal), left message |
| 4-9-08 | .2 | Prepare withdrawal of sanctions motion and withdrawal of request for production |
|  | .2 | File withdrawal with court |
|  | N/C | (.1 hr) Serve withdrawal on opposing counsel |
|  | .1 | Remove docket calendar event for motion to shorten time to respond |
|  | N/C | PC to client re: settlement, left message |
|  | .2 | PC from client re: settlement of MFRS, reminder to call and check on payment receipt status |
| 5-7-08 | .2 | Perform time calculations since last done on 4-1-08 |
|  | N/C | (.5 hr) Review and group time entries by subject and chargeability |
|  | .2 | Prepare amended 2016(b) and amended POC for attorney fees |
|  | .2 | File amended 2016(b) and amended POC for attorney fees |
|  | .7 | Prepare this time summary for work to date on the MFRS |

20.     A copy of the fee agreement between Cantrell and the Debtors was presented into evidence at the hearing, and indicates that Cantrell is permitted to charge fees for additional services not included in the initial retainer. The agreement does not include an hourly rate or any definite amounts. The agreement includes the following relevant provisions:

> 1. Client empowers attorney to take all legal actions and provide all legal services deemed necessary and advisable by attorney in this matter. Said attorney may associate other counsel as he deems necessary unless otherwise agreed.

> 4. ADDITIONAL FEES.  It is understood and agreed that additional work may be required in the case which was not contemplated or agreed to be performed by Cantrell Law Firm PC at the time of entering into this agreement between the attorney and the client. In the event that additional work is necessary, client agrees to pay an additional fee to attorney for work performed. If client is unable to pay those fees or costs at the time the extra work is performed, then client authorizes attorney to make a claim for those fees through the Chapter 13 Plan.

21.     At the hearing Cantrell proffered evidence and arguments regarding his experience and the prevailing rate for services such as those charged in this case and explained the need for the work performed, the reasons for his detailed responses, and generally justified what appeared from first glance to be excessive amounts of time spent on routine matters. Cantrell asserts that the rate applicable to his hourly time is

$250 per hour. He advised the court and his time records indicate that he eliminated and/or reduced certain time entries, lowering the overall bill.

22. At the hearing the Court concluded that it would review the detailed bill and retainer agreement presented on that date, consider the statements and information presented by the parties at the hearing as to the nature and necessity of the fees in question, and would advise if any portion of the amount claimed appeared questionable to the Court. If questionable, the Court would advise the parties and they would have an additional opportunity to supplement the record or make legal arguments regarding any portion of the fees presented in the May 7 Disclosure and associated bill. There was no mention at the hearing of any additional fees.

23. After the hearing and after a review of the fees, the Court conferred informally with the parties in an attempt to resolve the matter. During those communications Debtors' attorney advised the Court and the trustee that he again needed to amend his claim for fees for additional charges incurred as a result of the hearing on the trustee's objection and approval of his fees. Thereafter Debtors' attorney submitted the additional charges below via email for consideration:[2]

| Date | Time | Action taken |
|---|---|---|
| 5-8-08 | N/C | (4.6 hr) (12:08 am – 4:40 am) Prepare for contested hearing, review pleadings, review Simmons case, review, Carlson case, review Brown case, review some of the cases cited in these opinions, review federal rules of evidence (reduced per billing discretion) |
| | $100 | (1.7 hr)  Travel to Columbia for contested attorney fee hearing – flat fee per retainer contract |
| | .6 | Waiting for hearing |
| | 1.1 | Hearing on contested attorney fees |
| | N/C | (1.8 hr) Travel back to office – N/C since retainer contract flat fee amount exceeded (206 miles round trip) |
| 5-13-08 | .1 | Review email letter from Court |
| 5-14-08 | .2 | Phone Call (PC) from client re: letter from Court and ability to pay fee claim and reasonableness |
| | .4 | Prepare and email letter to Court regarding client response |
| 5-20-08 | .4 | Prepare this new time summary and compute time |
| | .1 | Email to client with this bill |
| Total | | 2.9 hr x $250 an hour = $725 plus $100 flat fee = $825 total now due |

---

[2]  These additional fees do not appear on the Court's official record other than in this Order.

7

24.     In response to the Court's post-hearing inquiry, Cantrell advised the Court that his clients had no objection to the fees charged, that they would be able to pay $500 of the fees directly to him and that he was requesting payment of the remainder through the Chapter 13 plan pursuant to the terms of the fee agreement.

### Discussion and Conclusions of Law

11 U.S.C. § 329 provides that an attorney representing a debtor must file a statement of compensation paid or agreed to be paid and, "[i]f such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive." 11 U.S.C. § 330(a)(3) gives guidance to the Court as to what may be compensable. It provides that in matters governed by § 330 the Court should analyze the following:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field;[3] and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A-F). 11 U.S.C. § 330(a) adds

> (4)(A)…the court shall not allow compensation for -
>   (i)    unnecessary duplication of services; or
>   (ii)   services that were not -
>          (I) reasonably likely to benefit the debtor's estate; or
>          (II) necessary to the administration of the case.

---

[3]   This subsection and consideration was added by the October, 2005 amendment to the Code which was largely effective two days after the filing of this case. However, as the list of factors was not exhaustive prior to that time, it will be given some weight.

> (B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

In the Fourth Circuit other factors are considered, which were first set out in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978). As stated in In re Simmons, No. 06-01566-JW, 2007 Bankr. LEXIS 1101 (Bankr. D.S.C. Mar. 2, 2007):

> Layered onto the factors set forth in 11 U.S.C. § 330 are certain other factors adopted by the Fourth Circuit. In Harman, the Fourth Circuit determined that the lodestar method may be used to calculate reasonable attorney's fees in a chapter 13 case. See Harman, 772 F.2d at 1152. The lodestar method involves a consideration of the following factors: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." Id. (citing Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978).

Simmons, at *13-14 (citing Harman v. Levin, 772 F.2d 1150, 1152 (4th Cir. 1984)). The Barber factors "are properly employed in the determination of a reasonable attorney's fee under 11 U.S.C. § 330." Harman, 772 F.2d at 1151.

Chapter 13 debtor's attorney fees are often paid through a Chapter 13 plan pursuant to 11 U.S.C. § 1322(a)(2). Payment of fees through a Chapter 13 plan, especially payment of post-petition fees, may allow a debtor to receive services from his or her attorney that require little or no additional payment directly from the debtor.[4] Therefore, attorney's fees in a Chapter 13 cases require scrutiny from the Chapter 13

---

[4] Fees are routinely paid from the debtor's established monthly Chapter 13 plan payment, which creates the pool of funds available to all creditors paid through the plan. Funds that would otherwise be paid to general unsecured creditors are often appropriately diverted to cover post-petition fees instead.

9

trustee and the court because this method of paying attorney fees – although proper and useful in certain circumstances – gives a debtor little incentive to make a thorough cost/benefit analysis or otherwise work to minimize fees when authorizing services.

For non-routine matters and larger fee amounts in all chapters of bankruptcy, fee applications containing sufficient information, noticed appropriately and presented to this court are routinely approved without objection or hearing. Such fee applications contain information not only indicating the attorney's charges, but also his or her time and hourly rate. They also explain and justify the time spent and the necessity and benefit to the estate, provide information as to the attorney's qualifications and standard fees for like services, and generally serve to justify the requested fees with any information necessary under the circumstances pursuant to the authorities cited above.[5] That procedure was not followed in this case and the trustee objected to these larger and more unusual claims, which were only supported by minimal information.

In many Chapter 13 cases in the past, the Court has endeavored to find a way to approve larger fee awards in Chapter 13 cases that have not been properly presented in a fee application.[6] As the undersigned stated in another case involving this attorney decided over a year ago, In re Carlson:

> Counsel for chapter 13 debtors in this district often file proof of claim forms for payment of attorney fees subject to the conditions described in In re Simmons, No. 06-01566-jw, slip op. at 3 (Bankr. D.S.C. Mar. 2, 2007). In other instances, a fee application is necessary. While the court agrees that the proofs of claim

---

[5] *See e.g.* U.S. Trustee Program Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330, 28 C.F.R. Part 58, Appendix. Fed. R. Bankr. P. 2016(a), 2002(a)(6) & k and 9034, S.C. LBR 9014-2.

[6] For a more complete discussion of the Chapter 13 attorney fee payment process in place at the time this case was filed, and whether a fee application is warranted or not, see this court's decisions in In re Simmons, No. 06-01566-JW, 2007 Bankr. LEXIS 1101 (Bankr. D.S.C. Mar. 2, 2007); In re Carlson, No. 05-14579-HB, 2007 Bankr. LEXIS 2828 (Bankr. D.S.C. Aug. 17, 2007); and In re Brown, No. 04-11187-DD, 2008 Bankr. LEXIS 161 (Bankr. D.S.C. Jan. 22, 2008). Mr. Cantrell was the debtors' attorney in the latter two cases.

> together with the Rule 2016 statements and amendments thereto filed by Cantrell were insufficient in form and substance to constitute a fee application and did not contain sufficient information to evaluate the claim, the subsequent development of the record before and at the hearing gave the court sufficient information to assess the validity of the contested portion of the claim.

In re Carlson, No. 05-14579-HB, 2007 Bankr. LEXIS 2828, at *6-7 (Bankr. D.S.C. Aug. 17, 2007).

The documents filed by Cantrell in this case through the May 7 hearing request significant fees – $2725 over the $2000 fee initially paid – and contain only minimal information. The trustee justifiably objected to the request due to the amount of the claims and the corresponding lack of information. After the trustee objected, the Debtors' attorney supplemented the record substantially.[7] Just as in the Carlson case, the Court now finds that although the initial fee requests were insufficient in form and substance to constitute a fee application and did not contain sufficient information to evaluate the claims, the fees in the May 7 bill in the amount of $2725 can now be approved after the subsequent development of the record.[8]

The fees to be considered for approval by the court for charges after May 7 total $825. They are detailed in paragraph 23 above. These fees were incurred to answer the trustee's objections and the Court's questions about Cantrell's fee request. Even though Cantrell has repeatedly faced challenges to the sufficiency of information in larger, non-standard fee requests before this Court, he elected to file only a minimal Rule 2016(b)

---

[7] The record was supplemented not only with additional supporting information, but also with additional fee requests.

[8] In making this determination, the court was not only liberal with the attorney on procedure, but also gave him the benefit of the doubt on a number of time entries that are arguably excessive.

11

statement and a one-page Proof of Claim form.[9] Facing a challenge to the sufficiency of the information in the fee request, he thereafter had to justify his billings. Had Cantrell prepared a proper fee application with sufficient information, he likely could have avoided some or all of the additional charges incurred in the objection process. Further, the Code provides that ***reasonable charges for preparing*** the fee application can be compensated from estate funds.[10]

However, many courts find that amounts incurred in ***pursuing and collecting*** fees in bankruptcy – beyond preparation of the fee application – are not compensable from estate funds. Many rely upon the "American rule" which requires litigants to bear their own expenses in the absence of an agreement. See In re Engman, No. 01-13070, 2008 WL 2156345, at *7 (Bankr. W.D. Mich. May 14, 2008) (discusses In re Worldwide Direct Inc., 334 B.R. 108 (D. Del. 2005), a prior case allowing such fees, and states that it and other courts approving such fees overlook the fact that nonbankruptcy attorneys can spend considerable time justifying a bill to the client and possibly in court without any hope of reimbursement for that time. Applying the American Rule allows bankruptcy and nonbankruptcy attorneys to be treated the same, which is the goal of Worldwide Direct and § 330(a) – to enable bankruptcy professionals to be compensated on the same basis as their non-bankrutpcy counterparts); In re St. Rita's Assoc. Private Placement, L.P., 260 B.R. 650 (Bankr. W.D.N.Y. 2001) (applies "American rule" with 11 U.S.C. § 330; while Chapter 11 debtor's counsel was entitled to be compensated for time spent in preparing its

---

[9] See In re Carlson, No. 05-14579-HB (Bankr. D.S.C. Aug. 17, 2007) and In re Brown, No. 04-11187-DD (Bankr. D.S.C. Jan. 22, 2008).

[10] 11 U.S.C. §330(a)(6) provides that "Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." In this case the Court did approve compensation for time spent preparing the fee documents before the hearing as is indicated in disclosures submitted through May 7.

12

underlying fee application, it was not entitled to be compensated for time that it spent in defending its fee application from objections where objections had been interposed in good faith and had even prompted a partial disallowance of requested fees). The reasoning of these courts appears consistent with the Barber factors set forth above, in that they allow charges only for "the customary fee for like work" outside of bankruptcy. Barber, 577 F.2d at 226, n.28.

Other courts have disallowed fees incurred in defending or justifying fee applications for various other reasons. See In re DN Associates, 165 B.R. 344, 355 (Bankr. D. Maine 1994) (court concluded that because the work defending the fee award benefitted only the debtor's attorney and financial advisor, it is not compensable); In re Teraforce, 347 B.R. 838, 867 (Bankr. N.D. Tex. 2006) (no compensation generally when objections filed in good faith and were "meritorious in significant part"); In re Brous, 370 B.R. 563, 572 (Bankr. S.D.N.Y. 2007) (fees denied).[11]

Other courts have found that compensation for such fees is appropriate in certain circumstances. In re Computer Learning Centers, Inc., 285 B.R. 191, 224 (Bankr. E.D. Va. 2002) (fees for defense of a fee application can be awarded when appropriate, such as where objections to the application are baseless. Factors that may be taken into account in deciding whether to award additional fees for defending a fee application are whether the application was accurate and complete, whether the application complied with all applicable standards, whether the objections were made in good faith, the extent of

---

[11] For cases allowing fees when a fee application process is used, see In re Wind N' Wave, 509 F.3d 938, 942 (9th Cir. 2007)(petitioning creditors awarded attorneys fees for their services in placing debtor into involuntary bankruptcy including additional compensation for their successful appeal of the bankruptcy court's denial of a fee award.)

13

additional work reasonably necessary under the circumstances and the extent to which the requested fees were awarded).

Engman discusses the fact that it is not always easy to determine the winner and loser in a fee application battle, as objections may be many and it is therefore not always clear as to which party "prevailed." The ultimate winner in this case as to the $2725 in fees approved through May 7 is the Debtors' attorney. Approval of those fees is only appropriate, however, after the trustee objected and caused the Debtors' attorney to come forward with sufficient proof of his entitlement to the fees. The attorney eventually prevailed substantively, but the trustee prevailed procedurally.

When considering the $825 incurred in the objection process, the court finds application of the American rule as discussed in Engman persuasive, but need not adopt any such reasoning here to decide this matter. Prior cases involving approval of fees incurred in defending objections appear to flow from challenges made to fees after utilization of the fee application process. The facts are different here. The procedure utilized by the attorney in this matter seeking larger fees on unusual facts with only a Rule 2016(b) Disclosure and one-page Proof of Claim form invites objections. The trustee's objection was clearly meritorious and posed in good faith, and the fee request contained insufficient information on its face to justify the fees. This Court cannot find any authority which has approved fees to defend an objection when the documents setting forth the fee request were conspicuously flawed.

**IT IS THEREFORE, ORDERED:**

That the fees requested through May 7, 2008 in the amount of $ 2725 in addition to the $2000 originally paid from the Debtors for filing the case are hereby approved.

Those fees in the amount of $2725 shall be paid as follows: $500 directly from Debtors to the attorney, with the remainder paid through the Chapter 13 plan. Of this amount approved for payment through the plan, $275 shall be funded by First Federal from the settlement with that creditor. The remaining fees in the amount of $825 are disallowed.

**IT IS SO ORDERED.**

15